IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-50314
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JULIO CESAR SAPIEN

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:06-CR-1803-1

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

PER CURIAM:[*]

Julio Cesar Sapien appeals the sentences imposed following his guilty-plea convictions for conspiracy to import cocaine, importation of cocaine, conspiracy with intent to distribute cocaine, and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841, 846, 952, 960, 963. He argues that the district court clearly erred in calculating the drug quantities for which he was held responsible and clearly erred in denying him a two-level minor role adjustment pursuant to U.S.S.G. § 3B1.2.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The district court should consider a defendant's relevant conduct when determining his base offense level under the Guidelines. U.S.S.G. § 1B1.3(a)(1). When an amount of drugs seized "does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 cmt. n.12. The district court's determination of the quantity of drugs for sentencing purposes is a factual finding that we review for clear error. United States v. Betancourt, 422 F.3d 240, 246 (5th Cir. 2005). A factual finding is not clearly erroneous so long as it is plausible in light of the record as a whole. United States v. Morris, 46 F.3d 410, 419 (5th Cir. 1995).

Sapien was arrested when he entered the United States from Mexico after United States Bureau of Immigration and Customs Enforcement (ICE) agents discovered 49.53 kilograms of cocaine in a hidden compartment of his vehicle. Sapien subsequently advised ICE agents that he had driven the same vehicle across the border on two previous occasions, that his mother-in-law hired him each of the three times he crossed the border, that she paid him the same amount of money each time, and that each time he delivered the vehicle to the same department store. The presentence report recommended that Sapien be held accountable for the 49.53 kilograms seized from the vehicle and an additional 99.06 kilograms (49.53 x 2) for the two previous trips, for a total of 148.59 kilograms of cocaine. Sapien objected, but the district court overruled his objection and found that Sapien should be held accountable for the full amount.

A district court may estimate drug amounts for sentencing purposes provided the estimate is based on reliable evidence. Betancourt, 422 F.3d at 246. "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." United States v. Alford, 142 F.3d 825, 832 (5th Cir. 1998) (quoting United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995)). "In [United States v. ]Medina, this Court inferred the amount of drugs for which the defendant was responsible based on extrapolation from the number of border crossings and the amount of cocaine seized during one such

crossing." Betancourt, 422 F.3d at 247. Sapien argues that he did not know whether there were drugs involved in the first two trips and that the first two trips may have been dry runs, but that explanation is doubtful. Sapien was hired by the same person to make each run; was paid for each run, and in the same amount each time; used the same vehicle for each run; and took the vehicle to the same location each time. Moreover, the relationship between Sapien and the person who hired him, his mother-law, and that it was Sapien's vehicle undercut the inference that the first two runs were tests of his trustworthiness. The fact that Sapien's wife was with him only on the last trip does not demonstrate that the district court clearly erred in its extrapolation. We cannot conclude that the district court clearly erred in calculating the drug quantity. See Betancourt, 422 F.3d at 249; United States v. Medina, 161 F.3d 867, 876-77 (5th Cir. 1998); United States v. Perez, 183 Fed. App'x 477, 481 (5th Cir. 2006).

Nor did the district court clearly err in rejecting Sapien's argument that he was entitled to a reduction for a minor role in the offense. See United States v. Villanueva, 408 F.3d 193, 203 & n.9 (5th Cir. 2005); U.S.S.G. § 3B1.2. Sapien introduced himself into the drug smuggling activities, and he was an integral part of those activities. "It is not enough that a defendant 'does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity.'" Villanueva, 408 F.3d at 203-04 (quoting United States v. Miranda, 248 F.3d 434, 446-47 (5th Cir. 2001)). Moreover, Sapien pleaded guilty to, among other charges, possession with intent to distribute cocaine and the importation of cocaine. A reduction under § 3B1.2 is not required when the defendant's sentence is based upon his own conduct "even though the defendant's activity in a larger conspiracy may have been minor or minimal." United States v. Atanda, 60 F.3d 196, 199 (5th Cir. 1995).

AFFIRMED.